Argued and submitted October 31, 1996, reversed and remanded with instructions
February 12, 1997

## Rick OLCOTT,
*Respondent,*

*v.*

## ROGGE WOOD PRODUCTS, INC.,
an Oregon corporation,
*Defendant,*

*and*

## UNITED STATES NATIONAL BANK OF OREGON,
an Oregon banking corporation,
*Appellant.*

(95-05-10786; CA A91822)

932 P2d 1204

James Westwood argued the cause for appellant. On the briefs were Paul V. Vaughan and Hershner, Hunter, Andrews, Neill & Smith, LLP.

D. Rahn Hostetter argued the cause for respondent. With him on the brief was Mautz Baum Hostetter & O'Hanlon.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

**WARREN, P. J.**

Defendant United States National Bank of Oregon (the Bank) appeals a judgment, based on a grant of plaintiff's motion for summary judgment, that foreclosed plaintiff's lien on logs that plaintiff had sold to Rogge Wood Products, Inc. (Rogge) and for which Rogge did not pay. The Bank was Rogge's lender and held a security interest in Rogge's inventory, including the logs. The Bank asserts that plaintiff's lien is invalid and that the court should have granted summary judgment to it. We agree with the Bank and reverse.

Plaintiff owns timberland in Wallowa County. In November 1994, he agreed to sell logs to Rogge. The agreement called for plaintiff to deliver the logs to Rogge at its mill in Wallowa and provided that Rogge would pay a total purchase price of $450 per thousand board feet. Although plaintiff was the sole owner and seller of the logs, he and Rogge agreed that Rogge would pay for the logs by paying $280 per thousand to plaintiff's logging contractor and $170 per thousand to plaintiff. Rogge received the logs but did not pay anything to either plaintiff or the contractor. Plaintiff then paid the contractor and filed this lien, seeking the full $450 per thousand board feet.[1]

The question for our decision is whether these facts support a lien under ORS 87.222, which provides:

"(1) A person who performs labor on or assists in obtaining, handling, manufacturing or transporting timbers or wood products has a lien upon those timbers and those wood products for the reasonable or agreed value for this labor or services, when the labor is performed or services provided at the request of the owner of the timbers or wood products or an agent of the owner.

"(2) A person who permits another to go on the land of the person and obtain timbers, has a lien upon the timbers, cut for the reasonable or agreed charge for that permission and stumpage."

---

[1] After plaintiff filed the lien, the Bank deposited a letter of credit, thereby discharging the lien. Plaintiff then proceeded against the letter of credit. ORS 87.342. The Bank subsequently sold the logs to a third party.

Plaintiff argues primarily that he is entitled to a lien under ORS 87.222(2). He says that he allowed another person, the logging contractor, to enter on his land to obtain timbers and thus is entitled to a lien for the amount that Rogge had agreed to pay for the logs. According to plaintiff, it is irrelevant that the person whom he allowed to enter on his land was his own agent rather than the purchaser of the logs. He points to evidence in the record that under current practices it is rare for the person who purchases the logs to be the one who cuts them. Rather, as in this case, private timberland owners normally arrange for felling the timber and sell the cut logs directly to the mill. Thus, plaintiff argues, construing the statute in a more limited fashion than he proposes would, as a practical matter, eliminate the protection that it otherwise provides timberland owners. He contends, finally, that the value of the permission and stumpage, and thus the proper amount of the lien, includes both the value of the standing timber and the cost of cutting it and delivering it to the mill; the value, thus, is equal to the price at which Rogge agreed to purchase the logs.

In response, the Bank first argues, relying on *McKinley et al. v. Tice et al.*, 129 Or 190, 194, 276 P 1110 (1929), that ORS 87.222 is in derogation of the common law and that we must therefore construe it strictly. That argument is based on an approach to statutory construction that the Supreme Court has since rejected. It has stated that

> "[t]his formula, expressing in part resistance to changes in existing law and in part the profession's historical preference for caselaw over legislation, is long overdue to be put to rest. Every statute 'derogates' from prior law, if it is adopted for any substantive reason at all. The 'no-derogation' formula, coupled with the tendency to treat statutes, when possible, as codifications of prior caselaw, denigrates and confines the role of legislative examination, discussion, and enactment of public policy in those fields of law that traditionally have developed in private litigation." *Beaver v. Pelett*, 299 Or 664, 668-69, 705 P2d 1149 (1985).

As the court pointed out in *Beaver*, the legislature itself has made the determination of legislative intent the primary criterion for construing statutes. 299 Or at 669; *see* ORS 174.020.

The court more recently emphasized the importance of legislative intent. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Although it may be appropriate to use certain canons of construction in order to help determine that intent, *see* 317 Or at 611-12, the canon that statutes in derogation of the common law should be strictly construed is not one of them. As the court explained in *Beaver*, that canon is not an attempt to determine legislative intent but, rather, to escape from it. This aspect of *McKinley* has no continuing force.

■■ The Bank's primary argument is that ORS 87.222(2) provides a lien only for a timberland owner who sells standing timber to a third party, whether a mill or someone else, and then allows that third party or its agent to enter on the owner's land to cut and remove the timber. The Bank points out that the amount of the lien is "the reasonable or agreed charge for that permission and stumpage." It argues that that phrase does not make sense in the context of a person who arranges and pays for the person's own timber to be cut and delivered to the purchaser at a location off the person's land.

We essentially agree with the Bank. The statute gives a lien to a person who permits *another* to obtain timber; a logger whom the *owner* hires to do the work is not "another" who obtains timber. In the context of the statute as a whole, that term refers to a person who is a stranger to, not one working for, the owner. Thus, according to the statute, the person who enters on the land does so to "obtain timbers." That phrase refers to a person who will retain the logs for his or her own benefit, not for the benefit of the landowner. One who cuts timber for the benefit of the owner does not obtain it but holds it for the owner's use.

The statute next provides that the amount of the lien is the "reasonable or agreed charge for that permission and stumpage." Because the charge is for permission and stumpage, it must be a charge owed by the person whom the owner permits to enter on the land. Plaintiff, however, did not charge the logging contractor anything for permission and stumpage;[2] rather, plaintiff paid the contractor for the work

---

[2] "Stumpage" value is the market value of the standing timber before it is cut. *See Gerdes v. Bohemia, Inc.*, 88 Or App 62, 67, 744 P2d 275 (1987).

that the contractor did in felling the timber and delivering the logs to Rogge. Nor did plaintiff charge Rogge for permission to enter on his land and obtain the timber; rather, he sold Rogge the cut logs, delivered to Rogge's mill. Plaintiff did not agree with anyone that the other person would pay a charge for permission and stumpage, nor is there anyone whom plaintiff could charge a reasonable fee for those things.

Plaintiff's problem is that the statute does not apply to his situation. Rather, it contemplates a timberland owner who sells cutting rights to a third party, such as a mill, and then is not paid for the value of those rights. Such an owner would give the purchaser "permission" and would receive "stumpage." The statute does not contemplate a timberland owner who sells felled logs rather than standing timber, who arranges for an independent contractor to cut and deliver the timber, and who retains ownership until the logs reach the ultimate purchaser. If plaintiff is correct that the statute thereby excludes most contemporary sales between timberland owners and purchasers of logs, that is a matter for legislative, not judicial, resolution.[3]

■ At oral argument and in a post-argument memorandum of additional authorities, plaintiff suggested that at least a part of the lien is valid under ORS 87.222(1), even if it is not valid under ORS 87.222(2). Plaintiff did not make that argument to the trial court. Even if we were to consider it, it is clear that plaintiff did not perform labor on the logs or otherwise meet the statutory criteria for this lien. Simply paying those whom he hired to do the work does not give him a lien for the work that they performed.

Reversed and remanded with instructions to grant defendant Bank's motion for summary judgment.

---

[3] Because of the view that we take of this case, we do not need to discuss plaintiff's assertion that the lien includes the price at which Rogge agreed to purchase the logs and is not limited to their value as standing timber.